**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **BORIS MUDD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No: 1:12 CV 164** |
| | ) | |
| **JOSEPH W. LYON, et. al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

This matter is before the court on defendants Joseph Lyon and Ben Miller's

motion for summary judgment. (DE # 40.) Plaintiff Boris Mudd has filed a response

(DE # 43), and defendants have filed a reply (DE # 44.) For the following reasons,

defendants' motion is granted.

## I.  BACKGROUND AND FACTS[1]

On March 12, 2011, at approximately 3 A.M., defendant Officer Ben Miller, a

---

[1] Defendants have submitted a statement of material facts (DE # 41 at 1), as
required by N.D. Ind. Local Rule 56-1 (a). Defendants' statement of facts is supported by
evidence attached to their motion for summary judgment. (DE # 43.) Plaintiff has also
submitted a statement of undisputed facts (DE # 43 at 1), as required by Local Rule 56-1
(a). As defendants point out in their reply brief (DE # 44 at 2), however, plaintiff has not
supported his statement of facts with any evidence, as required by Federal Rule of Civil
Procedure 56(c)(1); *see also Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir.
2004) ("The mere existence of an alleged factual dispute will not defeat a summary
judgment motion; instead, the nonmovant must present definite, competent evidence in
rebuttal."). Plaintiff has submitted some evidence with his response brief (DE # 43 at 9-
13), but that evidence does not support the facts plaintiff lists in his statement of facts.
Because plaintiff has not supported his alleged facts with any evidence, the following
facts will come exclusively from defendants' statement of facts. The court will still make
mention of plaintiff's alleged factual disputes where appropriate.

patrolman for the Fort Wayne Police Department, was on routine patrol in a full police uniform and a fully marked police vehicle. (DE # 41 at 1; DE # 40-4 at 1.) As defendant Miller was traveling eastbound on Jefferson Boulevard from Webster Street, Miller observed a Teal 1995 Ford F-150 turn right (east) on Jefferson Boulevard from Harrison Street. (DE # 41 at 1; DE # 40-4 at 1.) As the truck was entering the intersection of Jefferson Boulevard and Calhoun Street, Officer Miller observed the truck change one lane to the left without using a turn signal. (DE # 41 at 1; DE # 40-4 at 1.) The truck then continued east, and began weaving within its lane. (DE # 41 at 1; DE # 40-4 at 1.) The truck then activated its left turn signal, and suddenly changed three lanes once. (DE # 41 at 1-2; DE # 40-4 at 1.) After making the sudden lane change, the truck was positioned in the far left lane. (DE # 41 at 2; DE # 40-4 at 1.)

As the truck continued east, it kept its left turn signal on. (DE # 41 at 2; DE # 40-4 at 2.) Once it reached the intersection of Jefferson Boulevard and Clinton Street, it stopped directly in the middle of the intersection. (DE # 41 at 2; DE # 40-4 at 2.) The driver of the truck looked to his left as if he was going to turn left, the wrong way onto a one-way street, and then continued to travel east before turning left onto Barr Street. (DE # 41 at 2; DE # 40-4 at 2.) At this point, Officer Miller believed he had observed the driver of the truck commit at least three separate traffic violations, and Officer Miller therefore activated his lights and pulled the truck over. (DE # 41 at 2; DE # 40-4 at 2.)

Officer Miller approached the truck and the driver identified himself as Boris Mudd ("plaintiff"), the plaintiff in this case. (DE # 41 at 2; DE # 40-4 at 2.) Officer Miller

informed plaintiff of the reasons for the stop. (DE # 41 at 2; DE # 40-4 at 2.) At that

point, Officer Miller observed that plaintiff had red, glassy, watery eyes. (DE # 41 at 2;

DE # 40-4 at 2.) Additionally, Officer Miller observed that plaintiff had slurred speech

and delayed motor skills. (DE # 41 at 2; DE # 40-4 at 2.) Plaintiff was also unable to

locate his registration in his glove box, and had slow finger dexterity. (DE # 41 at 2;

DE # 40-4 at 2.) Based on his training and experience, Officer Miller knew that these

indicators were consistent with someone who had been consuming alcohol. (DE # 41 at

2; DE # 40-4 at 2.)

Due to observing signs of alcohol consumption, Officer Miller gave plaintiff a

portable breath test. (DE # 41 at 3; DE # 40-4 at 2.) The results showed that plaintiff had

a blood alcohol content ("BAC") of .15%.[2] (DE # 41 at 3; DE # 40-4 at 2.) At that point,

Officer Miller contacted an OWI unit to assist him at the scene. (DE # 41 at 3; DE # 40-4

at 3.) A short time later, Detective Joseph Lyon of the Fort Wayne Police Department

arrived at the scene wearing a full police uniform and driving a fully marked Fort

Wayne Police vehicle. (DE # 41 at 4; DE # 40-5 at 1.) After arriving on scene, Officer

Miller informed Detective Lyon of what he had observed the truck doing prior to

pulling plaintiff over: the truck changed lanes without using a turn signal; the truck was

weaving within its lane; the truck made a complete stop in the middle of an

---

[2] In his narrative report, Officer Miller indicated that plaintiff's BAC was actually
.015%. (*See* DE # 40-4 at 4.) In his affidavit, Officer Miller explains that this was a typo,
and that plaintiff actually had a BAC of .15%. (DE # 40-4 at 2.) Plaintiff has not put forth
any argument or evidence to dispute Officer Miller's affidavit explaining that the
portable breath test indicated that plaintiff's BAC was .15%.

intersection; and the driver appeared to be contemplating turning the wrong way on a one-way street. (DE # 41 at 4; DE # 40-5 at 2.)

Officer Miller then informed Detective Lyon that after observing this behavior, he initiated a traffic stop. (DE # 41 at 4; DE # 40-5 at 2.) Officer Miller also informed Detective Lyon that upon coming into contact with plaintiff, he observed plaintiff exhibiting signs of alcohol consumption. (DE # 41 at 4; DE # 40-5 at 2.) Finally, Officer Miller told Detective Lyon that a portable breath test revealed that plaintiff had a BAC over the legal limit of .08%. (DE # 41 at 4; DE # 40-5 at 2.)

At that point, Detective Lyon approached the truck to speak with plaintiff. (DE # 41 at 5; DE # 40-5 at 2.) Detective Lyon immediately observed that plaintiff had watery, bloodshot eyes. (DE # 41 at 5; DE # 40-5 at 2.) Detective Lyon could also smell the odor of alcohol on plaintiff's breath and body. (DE # 41 at 5; DE # 40-5 at 2.) Based on his training and experience, Detective Lyon recognized these observations as indications that plaintiff had been drinking. (DE # 41 at 5; DE # 40-5 at 2.) Detective Lyon asked plaintiff to step out of his truck. (DE # 41 at 5; DE # 40-5 at 2.) Detective Lyon then asked plaintiff to step away from his truck in order to administer field sobriety tests. (DE # 41 at 5; DE # 40-5 at 3.) At that point, plaintiff became argumentative, and asked that he be given a break. (DE # 41 at 5; DE # 40-5 at 3.)

After plaintiff eventually stepped away from the truck, Detective Lyon administered the horizontal gaze nystagmus test to plaintiff, a standardized field sobriety test. (DE # 41 at 5; DE # 40-5 at 3.)  Plaintiff failed the horizontal gaze

nystagmus test. (DE # 40-5 at 3.) Plaintiff was unsteady on his feet and swayed while standing. (DE # 41 at 5; DE # 40-5 at 3.)After plaintiff failed the test, Detective Lyon secured plaintiff in the back of his squad car. (DE # 41 at 5; DE # 40-5 at 3.)

After plaintiff had been secured in the squad car, Officer Miller and Detective Lyon conducted a standard pre-tow inventory search of plaintiff's truck. (DE # 41 at 3. 6; DE # 40-4 at 3; DE # 40-5 at 3.) During the inventory of the truck, Detective Lyon observed a partially burned hand-rolled cigarette (commonly known as a "roach") in the ashtray. (DE # 41 at 6; DE # 40-5 at 3.) From his training and experience, Detective Lyon knew that hand-rolled cigarettes often contain marijuana. (DE # 41 at 6; DE # 40-5 at 3.) Therefore, Detective Lyon pulled the cigarette from the ashtray and smelled it. (DE # 41 at 6; DE # 40-5 at 3.) Detective Lyon detected an odor of burned marijuana. (DE # 41 at 6; DE # 40-5 at 3.)

While conducting an inventory of the glove box, Detective Lyon found a small, clear plastic container that had a residue of green, plant-like material in it. (DE # 41 at 6; DE # 40-4 at 3.) Detective Lyon knew from his training and experience that marijuana is a greenish color, and that marijuana is often kept in small containers. (DE # 41 at 6; DE # 40-5 at 3-4.) Therefore, Detective Lyon opened the container and smelled the contents, immediately recognizing an odor of marijuana from inside the container. (DE # 41 at 6; DE # 40-5 at 4.) Detective Lyon secured the burned hand-rolled cigarette and the container, and turned them into the Fort Wayne Police Department's evidence room upon arriving back at the station. (DE # 41 at 6; DE # 40-5 at 4.)

Before leaving the scene, Officer Miller cited plaintiff for failing to signal a lane change. (DE # 41 at 3; DE # 40-4 at 3.) After that, Detective Lyon transported plaintiff to the Allen County Justice Center in order to administer a certified breath test. (DE # 41 at 6; DE # 40-5 at 4.) While at the Allen County Justice Center, plaintiff repeatedly asked for water, despite being told by Detective Lyon that he could not have water until after taking the breath test. (DE # 41 at 6; DE # 40-5 at 4.) Plaintiff was also unable to recall statements that Detective Lyon made to him moments before. (DE # 41 at 6; DE # 40-5 at 4.)

After plaintiff was allowed to use the bathroom, Detective Lyon explained to plaintiff that if he did not provide a breath test, his driver's license would be suspended. (DE # 41 at 7; DE # 40-5 at 4.) Plaintiff then informed Detective Lyon that he would not provide a breath sample. (DE # 41 at 7; DE # 40-5 at 5.) Detective Lyon then administered standardized field sobriety tests to plaintiff, and noted several indications of physical impairment. (DE # 41 at 7; DE # 40-5 at 5.) Specifically, plaintiff failed the horizontal gaze nystagmus test and the nine-step walk and turn test. (DE # 41 at 7-8; DE # 40-5 at 5.) At that point, Detective Lyon set up the Certified Breath Test and asked plaintiff to take the test. (DE # 41 at 8; DE # 40-5 at 5.) Plaintiff again stated that he would not take the test. (DE # 41 at 7; DE # 40-5 at 5.)

After repeated refusals to take the Certified Breath Test, Detective Lyon arrested plaintiff for operating a vehicle while intoxicated. (DE # 41 at 8; DE # 40-5 at 6.) Plaintiff was then escorted to the intake area of the Justice Center, where he was talked into

providing a breath sample for the intake breath test machine. (DE # 41 at 9; DE # 40-5 at 6.) The intake breath test is used by the jail to determine if an inmate is over the jail acceptance threshold of .25%. (DE # 41 at 9; DE # 40-5 at 6.) Plaintiff took the test and was accepted as a prisoner.[3] After plaintiff was secured in a holding cell, Detective Lyon accessed the mycase.in.gov website to determine if plaintiff had any prior interactions with law enforcement. (DE # 41 at 9; DE # 40-5 at 6.) From his search, Detective Lyon was able to discover that plaintiff had been previously convicted of possession of marijuana, felony possession of marijuana, and a misdemeanor operating while intoxicated. (DE # 41 at 9; DE # 40-5 at 6.)

During the intake process, Detective Lyon also learned that plaintiff had not lived at the address listed on plaintiff's driver's license for quite some time. (DE # 41 at 9; DE # 40-5 at 6.) At that point, Detective Lyon arrested plaintiff for felony operating while intoxicated, felony possession of marijuana, and cited plaintiff for refusing to submit to a breath test and failing to notify the Bureau of Motor Vehicles of his address change. (DE # 41 at 9; DE # 40-5 at 7.) Plaintiff was then turned over to the custody of the Allen County Lockup. (DE # 40-5 at 7.)

Based on these events, plaintiff filed suit in state court against defendants Miller and Lyon. (DE # 1.) Defendants subsequently removed the case to this court. (DE # 2.) In plaintiff's second amended complaint (DE # 24), plaintiff brings several claims

---

[3] Nothing in the record indicates what plaintiff's BAC was, but presumably, it was under .25%.

against defendants under 42 U.S.C. § 1983. Specifically, plaintiff claims that defendant Miller violated the Fourth Amendment by stopping plaintiff's truck and detaining plaintiff. (*Id.* at 4-5.) Additionally, plaintiff alleges that defendant Miller violated the Fourth Amendment when he failed to stop Detective Lyon from arresting him. (*Id.*) Plaintiff further alleges that Lyon arrested him without probable cause, and that Lyon's pursuit of criminal charges against him constituted malicious prosecution. (*Id.* at 5.) Plaintiff also alleges that defendant Lyon violated the Fourth Amendment by searching the glove box of his car and confiscating plaintiff's Wallet, all without probable cause. (*Id.*)

## II.  LEGAL STANDARD

FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing that there

is an absence of evidence to support the non-moving party's case. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex,* 477 U.S. at 323). To overcome a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)). The nonmoving party must show that there is evidence upon which a jury reasonably could find for him. *Id.*

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003) (citing *Anderson,* 477 U.S. at 255). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966, 968 (7th Cir. 1998); *Doe,* 42 F.3d at 443. Importantly, the court is "not required to draw *every* conceivable inference from the record [in favor of the non-movant]-only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M., v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (emphasis added).

III.    **ANALYSIS**

The court will address each of plaintiff's claims in turn.

**A. The Traffic Stop**

Plaintiff first contends that defendant Miller violated the Fourth Amendment when Miller initiated the traffic stop on plaintiff's truck. (DE # 43 at 2.) Specifically, plaintiff argues that Officer Miller did not have probable cause to make the traffic stop. (*Id.* at 3.) In response, defendants argue that the initial stop of plaintiff's truck was justified because Officer Miller had probable cause to believe the driver of the truck had committed multiple traffic offenses. (DE # 41 at 13.)

As a general rule, a traffic stop does not violate the Fourth Amendment any time the police have probable cause to believe that a traffic violation has occurred. *United States v. Smith,* 668 F.3d 427, 430 (7th Cir. 2012); *see also Schor v. City Of Chicago*, 576 F.3d 775, 778 (7th Cir. 2009) ("The Fourth Amendment is not violated if a police officer has probable cause for a traffic stop."); *United States v. Cashman,* 216 F.3d 582, 586 (7th Cir. 2000) ("[S]o long as the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense, the officer has probable cause to stop the driver.").

"Probable cause exists if at the time of the arrest, the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Thayer v. Chiczewski*, 705

F.3d 237, 246 (7th Cir. 2012) (citations and quotations omitted). Probable cause "requires only that a probability or substantial chance of criminal activity exists; it does not require the existence of criminal activity to be more likely true than not true." *Id.* (citations and quotations omitted). "Probable cause is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances." *Id.* at 246-47 (citations and quotations omitted). Making a determination on probable cause requires the court to step into the shoes of a reasonable person in the officer's position. *Id.* at 247. "This is an objective inquiry; [the court does] not consider the subjective motivations of the officer." *Id.*

The Seventh Circuit has stated:

> When the question of probable cause arises in a damages suit its resolution typically falls within the province of the jury, though a conclusion that probable cause existed as a matter of law is appropriate when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them.

*Sheik–Abdi v. McClellan,* 37 F.3d 1240, 1246 (7th Cir. 1994)**;** *see also Phelps v. City of Indianapolis,* No. 1:02–CV–1912, 2004 WL 1146489, at *5 (S.D. Ind. May 20, 2004)**.**

Defendants argue that Officer Miller had probable cause to believe that plaintiff violated several traffic laws. The court need only address one violation in detail. Defendants argue that when plaintiff changed lanes without using a turn signal he violated Indiana Code § 9-21-8-24. (DE # 41 at 12-13.) That statute states:

A person may not:

(1) slow down or stop a vehicle;

(2) turn a vehicle from a direct course upon a highway; or

(3) change from one (1) traffic lane to another;

unless the movement can be made with reasonable safety. Before making a movement described in this section, a person shall give a clearly audible signal by sounding the horn if any pedestrian may be affected by the movement and give an appropriate stop or turn signal in the manner provided in sections 27 through 28 of this chapter if any other vehicle may be affected by the movement.

IND. CODE § 9-21-8-24.

In response, plaintiff points to the language in the statute which states that a person may not change lanes "unless the movement can be made with reasonable safety." (DE # 43 at 4.) Plaintiff directs the court to *Peck v. State*, where the Indiana Court of Appeals found that a defendant pulled over for changing lanes without signaling did not violate Indiana Code § 9-21-8-24 because there were no cars or pedestrians around when the defendant changed lanes. 705 N.E.2d 188, 189 (Ind. Ct. App. 1998), *opinion vacated by* 712 N.E.2d 951 (Ind. 1999). Plaintiff, thus, appears to contend that when he changed lanes without signaling, he did so with reasonable safety. (DE # 43 at 4.)

As defendants correctly point out in their reply brief (DE # 44 at 3), in this case, unlike in *Peck*, there was another car in the area that was directly affected by plaintiff's lane change without a turn signal. In his affidavit, Officer Miller testified that his car was "directly affected" by plaintiff's lane change without a signal. (DE # 40-4 at 2.) Therefore, based on the evidence presented, the court concludes that no reasonable jury could find that Officer Miller lacked probable cause to believe plaintiff violated Indiana Code § 9-21-8-24. Defendants have met their initial burden on this issue.

12

Plaintiff has failed to present any evidence indicating that he either used a turn signal to change lanes or that his lane change without signaling did not affect any other vehicle in the area.[4] In his statement of material facts, plaintiff does state that he made a lane change on Jefferson Boulevard with "reasonable safety," but he has not supported that claim with any admissible evidence.[5] (DE # 43 at 2); *United States v. Stevens*, 500 F.3d 625, 628 (7th Cir. 2007) ("[A]rguments in a . . . brief, unsupported by documentary evidence, are *not* evidence." (emphasis in original)); *see also Campania Mgmt. Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 853 (7th Cir. 2002) ("[I]t is universally known that statements of attorneys are not evidence.").

Therefore, a reasonable jury could only conclude that Officer Miller had probable cause to believe that plaintiff violated Indiana Code § 9-21-8-24, and defendants are entitled to summary judgment on plaintiff's claim that Officer Miller violated the Fourth Amendment when he initiated a traffic stop on plaintiff's truck.[6] *Schor*, 576 F.3d

---

[4] The evidence plaintiff did submit with his response brief, Detective Lyon's affidavit for probable cause regarding plaintiff's charge of possession of marijuana, a picture of Jefferson Street, and a hand-drawn diagram of Jefferson Street between Webster Street and Clinton Street, is not evidence indicating that when plaintiff changed lanes without signaling, his movement did not impact Officer Miller's vehicle. (DE # 43 at 9-13.)

[5] In his statement of facts, plaintiff does indicate that he used a turn signal when turning onto Barr Street. (DE # 43 at 2.) But he does not present any argument or evidence that indicates that he also used a turn signal when he was changing lanes on Jefferson Boulevard after passing Calhoun Street, which is the lane change that "directly affected" Officer Miller's car. (DE # 40-4 at 1-2.)

[6] Additionally, defendants have offered evidence that Officer Miller had probable cause to believe plaintiff had committed another traffic violation. First, Officer Miller

at 778 ("The Fourth Amendment is not violated if a police officer has probable cause for a traffic stop.").

**B. Plaintiff's Arrest**

Plaintiff also alleges that defendant Lyon arrested him without probable cause, and that Officer Miller violated the Fourth Amendment when he failed to stop Detective Lyon from arresting him without probable cause. (DE # 24 at 6-7.)

"In order to prevail on a claim of an arrest in violation of the Fourth Amendment, the plaintiff[] must show that [he or she was] arrested without probable cause; probable cause is an absolute defense to such a claim." *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir .2009); *see also Gutierrez v. Kermon,* 722 F.3d 1003, 1007 (7th Cir. 2013) ("To be deemed reasonable, a warrantless arrest made in public must be supported by probable cause . . . ."). Defendants argue that they had probable cause to

---

stated in his affidavit that he observed plaintiff change three lanes at once without using a turn signal 200 feet in advance, in violation of Indiana Code § 9-21-8-25. (DE # 40-4.) That statute states in part: "A signal of intention to turn right or left shall be given continuously during not less than the last two hundred (200) feet traveled by a vehicle before turning or changing lanes." IND. CODE 9-21-8-25. Plaintiff has failed to offer any evidence which contradicts Officer Miller's testimony on this issue. Although plaintiff does allege that he did eventually use a turn signal to turn onto Barr street (DE # t 2), he has not alleged any facts or submitted any evidence that contradicts Officer Miller's testimony that plaintiff failed to use a turn signal for at least 200 feet before changing multiple lanes.

Thus, even if Officer Miller lacked probable cause to believe that plaintiff had committed a violation of Indiana Code § 9-21-8-24, the undisputed evidence shows that Officer Miller also had probable cause to believe plaintiff had violated Indiana Code § 9-21-8-25.

arrest plaintiff for the crime of operating a vehicle while intoxicated ("OWI"). (DE # 41 at 14-15.)

As defendants correctly point out (DE # 41 at 16), however, plaintiff could have been arrested for the traffic offenses discussed above. *Atwater v. City of Lago Vista,* 532 U.S. 318, 354 (2001). Because defendants could have arrested plaintiff for the traffic offenses without violating his Fourth Amendment rights, plaintiff's Fourth Amendment rights were not violated when he was arrested, and the court need not engage in a detailed probable cause analysis with regard to plaintiff's alleged violation of the Indiana OWI law. *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013) ("Once Officer Snyder had probable cause to conduct the traffic stop of Jones for speeding, he could arrest Jones without violating his Fourth Amendment rights. . . . Thus, we need not address whether Officers Snyder and Moore also had probable cause to arrest Jones for OWI-refusal or OWI-endangerment.")

Nevertheless, it should be noted that the facts clearly show that Officer Miller and Detective Lyon had probable cause to believe that plaintiff had committed the crime of operating a vehicle while intoxicated.[7] Officer Miller observed plaintiff driving

---

[7] In this case, plaintiff was arrested for operating a vehicle while intoxicated, in violation of Indiana Code § 9-30-5-3. (DE # 41 at 14; DE #4-5 at 7.) That statute is read in conjunction with Indiana Code § 9-30-5-2, which states, in part, that "a person who operates a vehicle while intoxicated commits a Class C misdemeanor." IND. CODE § 9-30-5-2(a). Indiana Code § 9-13-2-86 defines intoxicated as follows:

"Intoxicated" means under the influence of:

(1) alcohol;

erratically, including swerving in his lane and then stopping in the middle of an intersection. (DE # 40-4 at 1-2). Additionally, Officer Miller observed that plaintiff had red, watery eyes, slurred speech, and a BAC of 0.15%.[8] (*Id.* at 2.) After Detective Lyon arrived on scene, Officer Miller relayed the information he had already gathered to Detective Lyon. (DE # 40-5 at 2.) Detective Lyon then spoke with plaintiff, and observed that plaintiff had red, watery eyes, slurred speech, and had breath that smelled like alcohol. (*Id.* at 3.) Detective Lyon then asked plaintiff to get out of his car. (*Id.*) After getting out of the car, plaintiff was unsteady on his feet, and failed a standard field sobriety test, the horizontal gaze and nystagmus test. (*Id.*)

Thus, it is clear that defendants had probable cause to believe that plaintiff had committed the crime of operating a vehicle while intoxicated. *See, e.g., Qian v. Kautz,* 168 F.3d 949, 953–54 (7th Cir. 1999) (police reasonably concluded that a driver who had difficulty walking, was hunched over, and whose speech seemed slurred had been operating vehicle while intoxicated); *see also Kermon,* 722 F.3d at 1012 (7th Cir. 2013)

---

(2) a controlled substance (as defined in IC 35-48-1);

(3) a drug other than alcohol or a controlled substance;

(4) a substance described in IC 35-46-6-2 or IC 35-46-6-3; or

(5) a combination of substances described in subdivisions (1) through (4);

so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties.

INDIANA CODE § 9-13-2-86 (2011).

[8] The legal BAC limit in Indiana is .08%. IND. CODE. § 9-30-5-1.

("[C]ommon indicia of intoxication include (1) the consumption of [a] significant amount of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; [and] (7) slurred speech." (citation and quotations omitted)).

In sum, because defendants could have arrested plaintiff for the traffic offenses, and because defendants had probable cause to believe plaintiff was operating his vehicle while intoxicated, defendants have met their initial burden on summary judgment. Plaintiff does not specifically address this claim in his response brief, and therefore, may have abandoned it. *Palmer v. Marion Cnty.*, 327 F.3d 588, 597–98 (7th Cir. 2003) ("[B]ecause [plaintiff] failed to delineate his negligence claim in his district court brief in opposition to summary judgment . . . his negligence claim is deemed abandoned.") But, in any event, plaintiff has not submitted any evidence that would raise a genuine issue of material fact on this claim, and defendants are therefore entitled to summary judgment. Additionally, because the undisputed facts show there was no constitutional violation when defendants arrested plaintiff, defendants are also entitled to summary judgment on plaintiff's claim that Officer Miller violated plaintiff's Fourth Amendment rights when he failed to stop Detective Lyon from arresting plaintiff. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) ("In order for there to be a failure to

intervene, it logically follows that there must exist an underlying constitutional violation[.]").[9]

## C. The Search of Plaintiff's Car

Plaintiff also claims that Detective Lyon violated the Fourth Amendment when he searched plaintiff's truck, including a locked glove compartment,[10] and confiscated plaintiff's wallet. (DE # at 5.) Defendants argue that the search of the truck was made pursuant to a valid warrantless inventory search. (DE # 41 at 18-19.)

"Inventory searches constitute a well-recognized exception to the warrant requirement and are reasonable under the Fourth Amendment." *United States v. Cartwright*, 630 F.3d 610, 613 (7th Cir. 2010). "An inventory search is lawful if (1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures." *Id.* at 614. A police inventory search prior to towing a vehicle is "lawful if conducted pursuant to standard police procedures aimed at protecting the owner's property—and protecting

_____

[9] To the extent that plaintiff also contends that defendants are liable for false arrest due to an alleged lack of probable cause regarding plaintiff's possession of marijuana charge, the court need not address that issue, because "probable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause." *Holmes v. Village of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007) (emphasis in original).

[10] Plaintiff alleges that the glove compartment was locked (DE # 24 at 5), but has not submitted any evidence to support that allegation.

the police from the owner's charging them with having stolen, lost, or damaged his property." *United States v. Cherry*, 436 F.3d 769, 772 (7th Cir. 2006) (citations and quotations omitted).

In this case, the court has already determined that defendants had probable cause to arrest plaintiff for both the traffic violations and for operating a vehicle while intoxicated. Therefore, plaintiff was lawfully arrested, and the first element set out in *Cartwright* has been met. 630 F.3d at 614. The question therefore becomes whether the search was "conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures." *Id.*

Defendants have submitted The Fort Wayne Police Department Motor Vehicle Tow and Inventory Policy. (DE # 40-3.) The purpose of that policy is "to provide officers with guidelines for the tow and inventory of motor vehicles." *Id.* The policy is "designed to protect motor vehicles and their contents while in police custody; to protect the department and towing agencies against claims of lost, stolen[,] or damaged property; and to protect department personnel and the public against injury or damaged property due to hazardous materials or substances that may be in the vehicle." (*Id.*) The policy provides for a warrantless inventory search of a motor vehicle when "[t]he vehicle has been lawfully seized or impounded pursuant to the arrest of the driver." (*Id.* at 1.) The policy, which had been in effect since 2005 (*see id.* at 3), also states that a motor vehicle inventory search "shall extend to all areas of the vehicle in which personal property or hazardous materials may reasonably be found, including, but not

limited to the passenger compartment, trunk[,] and glove compartment." (*Id.* at 2.) Finally, the policy allowed locked containers to be opened and inventoried if a key or combination is available. (*Id.*)

The undisputed evidence in this case shows that defendants lawfully arrested plaintiff, and that the subsequent inventory search of plaintiff's vehicle was done in accordance with the established inventory procedures of the Fort Wayne Police Department. Defendants have shown that the two elements set out in *Cartwright* have been met, 630 F.3d at 614, and therefore, defendants have met their initial burden on summary judgment. Plaintiff has not addressed this claim in his response brief, and may have abandoned the claim. *Palmer*, 327 F.3d at 597–98 (7th Cir. 2003) ("[B]ecause [plaintiff] failed to delineate his negligence claim in his district court brief in opposition to summary judgment . . . his negligence claim is deemed abandoned."). Plaintiff, however, has not presented any evidence which would raise an issue of fact regarding the legality of defendants' inventory search of plaintiff's truck, and defendants' are entitled to summary judgment on that claim.

### D. Malicious Prosecution

Next, plaintiff claims that Detective Lyon is liable for malicious prosecution based on Lyon arresting plaintiff for possession of marijuana. (DE # 24 at 5; DE # 43 at 4-7.) Specifically, plaintiff alleges that Detective Lyon arrested him without first field testing the cigarette recovered from plaintiff's passenger compartment to confirm that it was, in fact, marijuana. (DE # 43 at 4-7.) Plaintiff argues that Detective Lyon's failure to

field test the substance resulted in the substance never being tested, which in turn resulted in plaintiff's acquittal on the possession of marijuana charge. Plaintiff contends that this failure amounts to a malicious prosecution.[11]

Seventh Circuit case law on federal § 1983 malicious prosecution claims is sparse, primarily because "a federal claim for malicious prosecution is actionable only if the state fails to provide an adequate alternative[.]" *Julian v. Hanna*, 732 F.3d 842, 845 (7th Cir. 2013). District courts routinely dismiss federal malicious prosecution claims for that reason. *See, e.g., Scott v. Bender*, 893 F. Supp. 2d 963, 975-76 (N.D. Ill. 2012). Defendants, in fact, argue that they are entitled to summary judgment because Indiana recognizes a malicious prosecution cause of action. (DE # 41 at 20.) After defendants filed their briefs in this case, however, the Seventh Circuit made clear that Indiana, despite recognizing a cause of action for malicious prosecution, does not provide an adequate remedy for malicious prosecution claims because Indiana grants immunity to government actors from malicious prosecution claims. *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013); *see also Hanna*, 732 F.3d at 845-49.

Prior to these decisions, federal malicious prosecution claims were routinely dismissed in Indiana district courts under the adequate alternative remedy theory. *See,*

---

[11] In his complaint, plaintiff alleges that Detective Lyon is liable for malicious prosecution for falsifying facts in the probable cause affidavits that Detective Lyon signed. (DE # 24 at 5.) Plaintiff neither mentions these allegations in his response brief nor submits any evidence to support the allegations. Therefore, the court will assume that plaintiff is proceeding on his malicious prosecution claim only under the theory that Detective Lyon should have tested the cigarette prior to arresting plaintiff, and that the alleged failure to do so resulted in the cigarette never being tested.

*e.g.*, *Gutierrez v. City of Indianapolis*, 886 F. Supp. 2d 984, 988 n.1 (S.D. Ind. 2012).

Therefore, the court was able to find very few cases detailing the parameters of a federal

malicious prosecution claim. The Seventh Circuit has hinted at the requirements for a

federal malicious prosecution claim, *see Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir.

2001), and has even given examples of behavior that could support a malicious

prosecution claim against a police officer that causes charges to move forward against a

defendant. *See Serino*, 735 F.3d at 594 (indicating the following could constitute the basis

for a malicious prosecution claim: the officer's "recommendations were *knowingly* false,

[the officer] withheld exculpatory evidence from the prosecutor, or that [the officer]

took steps to wrongfully further what he knew was a baseless prosecution." (emphasis

in original)); *see also Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 901

(7th Cir. 2001) ([I]n order to state a claim for malicious prosecution against the police

officers under § 1983, [plaintiff] must do more than merely claim that they arrested and

detained him without probable cause. . . . rather, [plaintiff] must allege that the officers

committed some improper act after they arrested him without probable cause, for

example, that they pressured or influenced the prosecutors to indict, made knowing

misstatements to the prosecutor, testified untruthfully, or covered up exculpatory

evidence."). But, as far as the court can tell, the Seventh Circuit has not listed the

specific elements of a federal malicious prosecution claim.

Despite the lack of case law on federal malicious prosecution claims, the court

still has no trouble concluding that defendants are entitled to summary judgment on

plaintiff's federal malicious prosecution claim. First, as defendants point out in their reply brief, plaintiff's allegations -- that Detective Lyon failed to field test the burned cigarette and that due to Lyon's failure to test the cigarette the cigarette was never tested – are simply allegations. (DE # 44 at 6-7.) Plaintiff has not supported these allegations with any evidence.

In his response brief, plaintiff alleges that the failure to test the cigarette resulted in his acquittal on the possession of marijuana charge at trial. (DE # 43 at 6-7.) But the fact remains that the court simply does not know what happened at plaintiff's trial. Neither plaintiff nor defendants submitted any evidence on what happened at plaintiff's trial or the actions (or inactions) of Detective Lyon leading up to plaintiff's trial. Therefore, defendants have met their initial burden on plaintiff's federal malicious prosecution claim by pointing out plaintiff's lack of evidence supporting this claim. *Carmichael,* 605 F.3d at 460. Because plaintiff has not put forth any evidence that creates a genuine issue of material fact on his malicious prosecution claim, defendants are entitled to summary judgment on that claim.

But even if plaintiff had submitted evidence that supported his allegations, that evidence would still be insufficient to create a genuine issue of material fact on his malicious prosecution claim. Plaintiff's allegations regarding his malicious prosecution claim are that Detective Lyon failed to test the burned cigarette at the time of the traffic stop, and that this resulted in the cigarette never being tested for marijuana, which, in turn, resulted in plaintiff's acquittal on the marijuana possession charge at trial.

(DE # 43 at 6-7.) These facts would not support a claim for malicious prosecution because they do not indicate that Detective Lyon's alleged actions were done maliciously. Plaintiff has not alleged that Detective Lyon failed to test the sample in order to trump up charges he knew to be false, that Detective Lyon failed to test the sample because he knew that it was not marijuana, or that Detective Lyon tested the sample, discovered that the cigarette did not contain marijuana, and then withheld that evidence.

Thus, plaintiff has not alleged that Lyon's "recommendations were *knowingly* false, that he withheld exculpatory evidence from the prosecutor, or that he took steps to wrongfully further what he knew was a baseless prosecution." *Serino*, 735 F.3d at 594 (emphasis in original). Plaintiff has simply failed to allege any facts that would imply malice on the part of Detective Lyon. *Tully v. Barada*, 599 F.3d 591, 595 (7th Cir. 2010). Assuming that plaintiff was acquitted of the marijuana possession charge because no one ever confirmed that the burned cigarette actually contained marijuana, plaintiff's claim may be better described as a claim for "negligent prosecution." *Id.* Therefore, even assuming plaintiff had provided evidence of the allegations he made regarding the testing of the cigarette, defendants would still be entitled to summary judgment on plaintiff's malicious prosecution claim.[12]

_____

[12] Although plaintiff does not make clear whether he is suing defendants in their individual or official capacities, if plaintiff did bring these claims against defendants in their official capacities, defendants would still be entitled to summary judgment on those claims. Any suit against defendants in their official capacities would be a suit against the city of Fort Wayne. *See Sow v. Fortville Police Dept.*, 636 F.3d 293, 300 (7th Cir.

### E. Punitive Damages

Plaintiff has also requested punitive damages. (DE # 24 at 6.) "'[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Alexander v. City of Milwaukee*, 474 F.3d 437, 453 (7th Cir. 2013) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Defendants argue that they are entitled to summary judgment on plaintiff's claim for punitive damages because plaintiff has failed to present any evidence that would indicate that the actions of defendants in this case were motivated by an evil intent or involved reckless or callous indifference to plaintiff's federally protected rights. The court agrees that plaintiff has not offered any evidence that would indicate defendants had an evil motive or showed a reckless indifference to plaintiff's federally protected rights, and nothing in the record would support a conclusion that defendants' behavior meets that standard. Therefore, defendants have met their initial burden on this claim, and because plaintiff has neither responded to defendants' arguments nor

---

2011). Because plaintiff has failed to create a genuine issue of material fact regarding whether he suffered a constitutional violation, defendants would be entitled to summary judgment on any official capacity claim against defendants. *Id.* at 301-02 ("Plaintiff has not shown that he suffered a constitutional deprivation. Accordingly, Plaintiff has not shown that a constitutional deprivation was caused by an official policy or custom, which is necessary for municipal liability . . . ."); *see also Sallenger v. City of Springfield, Ill.,* 630 F.3d 499, 504 (7th Cir. 2010) ("[A] municipality cannot be liable . . . when there is no underlying constitutional violation by a municipal employee."); *Holm v. Village of Coal City*, 345 F. App'x 187, 191 (7th Cir. 2009); *Alexander v. City of South Bend*, 433 F.3d 550, 557 (7th Cir. 2007).

presented any evidence in support of the claim, defendants are also entitled to summary judgment on this claim.

IV.     **CONCLUSION**

For the foregoing reasons, defendants Joseph Lyon and Ben Miller's motion for summary judgment is **GRANTED**. (DE # 40.) There being no claims remaining against defendants in this case, the clerk is directed to **ENTER FINAL JUDGMENT** as follows:

> Judgment is entered in favor of defendants Joseph Lyon and Ben Miller, and against plaintiff Boris Mudd, who shall take nothing by way of his complaint.

**SO ORDERED.**

Date: January 17, 2014

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT